IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RAYMOND ANTHONY NAPOLITAN,

    Defendant.

Criminal No. 11-0146
ELECTRONICALLY FILED

**MEMORANDUM OPINION AND ORDER OF COURT**

This matter comes before the Court on Defendant, Raymond Anthony Napolitan's, Motion to Suppress Evidence. Doc. No. 27. The Court held a suppression hearing on the matter on August 1, 2012, at which time only witness, Officer Erick Gatewood, testified on behalf of the Government. In light of this Court's Findings of Fact and Conclusions of law, set forth below, the Motion to Suppress will be denied.

**I. Findings of Fact**

1. On June 29, 2007, Officer Gatewood, an employee of the Southwest Mercer County Regional Police Department, and who was alone in a patrol car, received a call from the 911 Center dispatcher to respond to a call taken by the 911 Center. Three other police officers from the same police department responded to the same call from the dispatcher.

2. Officer Gatewood understood from the 911 Center dispatcher that a domestic dispute was in progress at 248 Hamilton Avenue – specifically, that a woman was being held against her will in her home by her boyfriend, the Defendant.

3. Within two minutes, Officer Gatewood pulled in front of the one-story home and was joined by the other officers. After noting a white pick-up truck parked on the street in front of the house, Officer Gatewood ran the tags and determined the truck belonged to Defendant.

4. Officer Gatewood went to the front door of the home and attempted to make contact with the occupants, to no avail. After checking both the front and back doors, finding them locked, and not getting any response from the occupants, Officer Gatewood called the 911 Center.

5. The 911 Center provided Officer Gatewood the name and telephone number of the caller, a third party, Amanda Culbreth. Officer Gatewood called Ms. Culbreth, who claimed she had received a text message from Lisa Rodemoyer, who resided with Defendant. Ms. Culbreth said the text message indicated that if Ms. Rodemoyer called the police, Defendant said he would kill her before the police arrived.

6. Ms. Culbreth also told Officer Gatewood that Ms. Rodemoyer and Defendant had two vehicles a white pick-up and a green Grand Prix. She also provided Officer Gatewood with Ms. Rodemoyer's and Defendant's respective cell phone numbers.

7. When Officer Gatewood called Ms. Rodemoyer's cell phone, he received no answer. When he called Defendant's phone, Ms. Rodemoyer answered that phone and spoke to Officer Gatewood. Supresssion Hrg. Tr., p. 10.

8. Officer Gatewood asked Ms. Rodemoyer if she was "okay" and asked if she was alone. She advised him that she was "okay" and that she was alone, but she "seemed nervous on the phone" and upset – as if she was crying or had been crying. She was also "pausing at her answers" when he asked her a question. After Ms. Rodemoyer told Officer Gatewood that she was "getting dinner" at Kentucky Fried Chicken, he asked her to return to her home to "get this cleared up." Id., pp. 10-11.

9. Ms. Rodemoyer returned to the house, driving a green Grand Prix, and as she exited the car he noticed that her face was red and she started to cry as soon as Officer Gatewood began talking to one another. Id., pp. 11-12.

10. When asked, Ms. Rodemoyer told Officer Gatewood that she had taken Defendant to a friend's house and that he was no longer present in the home. Id., pp. 12.

11. When Officer Gatewood again asked if Defendant was present in the home, she offered Officer Gatewood the opportunity to check the house if he wanted to do so. Specifically, Officer Gatewood testified that Ms. Rodemoyer stated that Defendant "wasn't in the residence and [Officer Gatewood] could check if [he] wanted to." Id., pp. 12-13.

12. Upon this invitiation, Officer Gatewood, along with the other police officers who had responded to the dispatch from the 911 Center, followed Ms. Rodemoyer into the home she shared with Defendant at her invitation. Id., pp. 13-14.

13. Once in the home, the officers cleared each room without finding Defendant present. It was at this time that Ms. Rodemoyer told Officer Gatewood that Defendant had threatened her with a handgun which was on the mantle above the fireplace. Id., p. 14.

14. Officer Gatewood secured the handgun, found a full magazine, but could not discern the serial number on the weapon. He took the gun into a different room which contained a desk, and as he attempted to read the serial number on the gun one of the other officers noticed white power on the desk and what appeared to be drug contraband in the wastebasket. Id., pp. 14-15.

15. Based on these discoveries, the police officers obtained a search warrant for the premises, the execution of which resulted in additional weapons and contraband being seized.

## II. Conclusions of Law

1. The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

2. One's home is sacrosanct, and unreasonable government intrusion into the home is "the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980); see also, *Lewis v. United States*, 385 U.S. 206, 211 (1966) ("Without question, the home is accorded the full range of Fourth Amendment protections.").

3. The Fourth Amendment does not prohibit all searches—only those that are unreasonable. *U.S. v. Price*, 558 F.3d 270, 277 (3d Cir. 2009), *cert. den.* 130 S.Ct. 375 (2009).

4. The general rule is that the warrantless entry into a person's house is unreasonable *per se*. *Price*, 558 F.3d at 277, citing *Payton,* 445 U.S. at 586.

5. This rule, however, is subject to several "jealously and carefully drawn" exceptions. *Price*, 558 F.3d at 277, citing *Jones v. United States*, 357 U.S. 493, 499 (1958).

6. "It is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted).

7. "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id*. at 248-49 (citations omitted).

8. Factors to consider include: the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment. *Price,* 558 F.3d at 278.

9. Consent to search is determined through an evaluation of the totality of the circumstances. *Schneckloth,* 412 U.S. at 227. See also, *Price,* 558 F.3d at 278.

10. It has been recognized that law enforcement cannot conduct a warrantless search under the pretense that a crime has been committed when in fact it has not. *U.S. v. Richardson*,

501 F.Supp.2d 724, 734 (W.D. Pa. 2007), citing *United States v. Phillips*, 497 F.2d 1131 (9th Cir. 1974).

11. It is settled that at a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *U.S. v. Richardson*, 501 F.Supp.2d at 734, citing *United States v. McKneely*, 6 F.3d 1447, 1452–53 (10th Cir. 1993).

12. The Court finds the testimony of Officer Gatewood to be credible. The Court also notes that no conflicting testimony was proffered during the suppression hearing.

13. The Court has considered all of the above facts and finds the Officer Gatewood merely asked Ms. Rodemoyer if Defendant was in the home. Although she responded in the negative she also invited the police officers to enter the house to ascertain for themselves that the home was void of his presence. No evidence was presented to this Court to indicate that Ms. Rodemoyer's invitation to the police officers to search the house for Defendant was anything but voluntary. Thus, the Court finds the police officers were given voluntary consent to search the premises.

14. In addition, the Court notes that once the police officers were in the home and as the search for Defendant was taking place or after the search ended, Ms. Rodemoyer again volunteered information concerning the location of the handgun that was used to threaten her life. Thus, the Court finds that police officers, who were legally present in the home, were provided with evidence by Ms. Rodemoyer, a resident in the home.

15. Next, the Court concludes that this evidence along with the drug trace and contraband evidence were not improperly seized. As noted above, Ms. Rodemoyer was a co-resident of the home, and Defendant's counsel admitted during the suppression hearing, Defendant was not contesting Ms. Rodemoyer's authority to give consent to search the premises. Thus, her invitation to the police to search the premises for Defendant, and her subsequent voluntary statement concerning the location of the handgun does not violate Defendant's Fourth Amendment rights.

16. Defendant's main argument is that every time Officer Gatewood asked Ms. Rodemoyer about her well-being or the location of Defendant she responded in such a way so as to negate any probable cause that they search the premises. However, the Court disagrees. Based on the totality of the circumstances then present before the police officers – specifically: (1) the Defendant's own vehicle (the white pick-up truck) being parked in front of his house; (2) the fact that Ms. Rodemoyer did not answer her own cell phone, but instead answered Defendant's when the police called Defendant; (3) Ms. Rodemoyer's emotional condition; (4) the fact that Ms. Rodemoyer had told Officer Gatewood that Defendant threatened Ms. Rodemoyer's life if the police were to get involved; and (5) Ms. Rodemoyer's invitation that the police search the inside of the house for Defendant – the police were justified in entering the premises to ensure Ms. Rodemoyer's safety. Once the house was cleared and the police confirmed the Defendant was not present, they obtained evidence that Ms. Rodemoyer also

volunteered, *i.e.* the handgun. This led the police to obtain a search warrant which led to the seizure of a safe which contained more guns, cash, and drug contraband.

17. Finally, the Court concludes that the police officers did not use a "ruse" to obtain access to Defendant's home. Again, Ms. Rodemoyer invited the police inside Defendant's home so that the officers could ensure for themselves that Defendant was not inside.

## III. Conclusion

Based on the totality of the circumstances present in this case, the police obtained voluntary consent from a co-resident of Defendant's home to search the home for Defendant. In fact, the co-resident invited the police officers to conduct the search of the house. During the course of this search the co-resident volunteered additional information concerning some of the evidence at issue in this suppression motion. Because the police had legal authority to enter the home (*i.e.,* an invitation from a co-resident of the home) the fruits of their search are not tainted, and thus are admissible as evidence in this case. An appropriate order follows.

    s/ Arthur J. Schwab
    Arthur J. Schwab
    United States District Judge

**ORDER**

AND NOW this 3rd day of August, 2012, upon consideration of Defendant's Motion to Suppress Physical Evidence (doc. no. 27), the Government's Response (doc. no. 31) and the evidence presented at the suppression hearing held on August 1, 2012, this Court hereby DENIES the Motion to Suppress Physical Evidence.

    s/ Arthur J. Schwab
    Arthur J. Schwab
    United States District Judge

cc: All Registered ECF Counsel and Parties